**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **RAYMONE MOORE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 09 C 4851** |
| ) | |
| **CITY OF CHICAGO, and** ) | **Judge Rebecca R. Pallmeyer** |
| **Chicago Police Officer** ) | |
| **CHRIST SAVICKAS, Star 5991,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raymone Moore alleges that Chicago Police Officer Christ Savickas arrested him without probable cause, in violation of the Fourth Amendment and 42 U.S.C. § 1983 (Counts I and II), and threatened to falsely charge him with possession of a gun unless he offered up information on drug and weapons deals.  Plaintiff also alleges intentional infliction of emotional distress in connection with the arrest (Count III), claims the City of Chicago is liable through *respondeat superior* (Count IV), and seeks indemnification for the claims against Savickas from the City (Count V).  Defendants Savickas and the City of Chicago move for summary judgment, arguing that Savickas had probable cause to arrest Plaintiff, and that Savickas's actions do not support a charge of intentional infliction of emotional distress.  For the reasons explained herein, Defendants' motion for summary judgment is granted as to Counts III and IV, and otherwise denied.

## BACKGROUND

Plaintiff Raymone Moore alleges claims for unreasonable seizure and false arrest pursuant to 42 U.S.C. § 1983, as well as a state law claims for intentional infliction of emotional distress, *respondeat superior*, and indemnification pursuant to 745 ILCS 10/9-102.  Defendants City of Chicago and Officer Christ Savickas have moved for summary judgment on Moore's claim, arguing that Savickas had probable cause to detain and arrest Moore.

On May 1, 2009, at approximately 1 a.m., Officers Savickas, Agustin Torres, Jr., and Linda

Winclechter, were patrolling near 37th Street and Michigan Avenue in Chicago. (Def.'s 56.1(a) ¶ 16.) Savickas drove the patrol car, Torres rode in the front passenger seat, and Winclechter sat in the back seat. (*Id.* ¶ 17.) Savickas made eye contact with an individual walking near that intersection, who then dropped an unregistered .357 Strum, Ruger, & Co. revolver with six live rounds and ran west and north down Michigan Avenue. (*Id.* ¶¶ 18-20.) Savickas stopped the car, exited, and recovered the gun. (*Id.* ¶ 20.) Savickas asked Torres and Winclechter to drive around the block in an attempt to find the individual who dropped the gun, but they were unsuccessful. (*Id.* ¶¶ 21-23.) Savickas prepared a case incident report in which he described the individual as a black male, 150 pounds, aged sixteen to twenty, and noted that he recognized the individual from previous encounters. (*Id.* ¶ 25.) Savickas testified that he did not know the individual's name. (Savickas Deposition, Ex. 3 to Def.'s Br. at 30.)

On May 3, 2009, at approximately 5:30 p.m. Savickas detained Plaintiff near the intersection of 39th Avenue and Calumet Street, and accused him of dropping the gun two days earlier. Plaintiff denied this. (Def.'s 56.1(a) ¶¶ 29-31.) Savickas nevertheless handcuffed Plaintiff and transported him to the Second District Police Station. (*Id.* ¶¶ 31-34.) The parties agree that Savickas asked Plaintiff for information about illegal drugs, and Plaintiff provided Savickas with an address where he believed there might be drug or gun activity–but the circumstances under which this occurred remain in dispute. (*Id.* ¶¶ 35, 37.) Torres had been riding in the patrol car with Savickas when Moore was arrested; although Torres did not recognize Moore from the May 1 incident, when Moore was arrested he did not tell Savickas either that he could or could not identify Moore. (Torres Deposition, Ex. 4 to Def.'s Br. at 27-30.) Twenty to thirty minutes after Moore, Torres, and Savickas arrived at the police station, Savickas exited the interview with Moore and asked Torres whether he could identify Moore; Torres said he could not. (Torres Deposition at 35; Def.'s 56.1(a) ¶ 37.) Winclechter did not work on May 3, and only found out about Moore's arrest from Savickas and Torres the following week. (Winclechter Deposition, Ex. 5 to Def.'s Br. at 22- 24.) Eventually,

Savickas allowed Plaintiff to use Savickas's personal cell phone to call Plaintiff's girlfriend, and Plaintiff then left the police station, precisely when this occurred is disputed. (*Id.* ¶¶ 41-43.) Plaintiff was not charged for possession of the gun. Plaintiff initiated a complaint regarding this incident with the Internal Affairs Division Confidential Investigation Section, but did not sign the complaint.[1] (*Id.* ¶ 47.)

Plaintiff and Defendants present wholly divergent accounts of what occurred between the time Savickas brought Plaintiff to the police station and when he was released. Plaintiff alleges that he was handcuffed to a bench in the police station for 45 minutes to an hour while waiting to talk with Savickas (Pl.'s 56.1(b) ¶ 8); Defendants contend handcuffs were removed altogether after five to ten minutes. (Def.'s Resp. ¶ 8.) Plaintiff claims he was taken into an interrogation room (Pl.'s 56.1(b) ¶ 9); Defendants contend it was a clerical staff office. (Def.'s Resp. ¶ 9.) Defendants allege that Plaintiff volunteered information about individuals who might have drugs (Def.'s Resp. ¶¶ 10-11); Plaintiff contends when he was initially asked for information, he refused to give any. (Pl.'s 56.1(b) ¶¶ 10-11.)

Plaintiff further alleges that Savickas showed him a gun in a plastic bag, and told him that he would be charged with gun possession and face significant jail time if he did not provide information about individuals with drugs, and that he gave information because of this threat. (Pl.'s 56.1(b) ¶¶ 12-14.) According to Plaintiff, Savickas told him, "You've got until Thursday. . . . You

---

[1] Moore made several calls the week following the incident to follow-up on his complaint, but ceased calling on May 12. (Moore Deposition, Ex. 5 to Def.'s Br. at 85-100.) A report from the Internal Affairs Division, dated May 12, indicates that the investigating officer asked Moore whether he had been "arrested, contacted or harassed by the undercover or any other officers" since the incident, and Moore indicated he had not been. (Ex. 12 to Def.'s Br. at 1.) The officer then asked "if there was anything he would like to add that could warrant proceeding with his complaint," to which Moore replied, "he did not want to proceed with the complaint, he did not need to get anyone in trouble if they didn't do anything." (*Id.*) Moore's deposition testimony also indicates he made a complaint to the Independent Police Review Authority, but nothing in the record explains what became of that investigation. (Moore Deposition at 90-91.) Savickas testified that he was never contacted regarding an investigation into this incident. (Savickas Deposition at 56.)

need to have something for me or I am going to have to put this gun on you." (*Id.* ¶ 15.) Plaintiff claims Savickas gave Plaintiff his personal phone number, and told him to call by Thursday or face arrest. (*Id.* ¶ 16.) Then, having interrogated Plaintiff from 6:50 p.m. until 8:40 p.m., Plaintiff claims, Savickas released him without charges, letting him out through a back door. (Pl.'s 56.1(b) ¶¶ 17-19.) Defendants deny the entirety of these events, except that they admit that Plaintiff was not charged, and that Savickas provided Plaintiff with his personal cell phone number. (Def.'s Resp. ¶¶ 12-19; Savickas Deposition at 44.) Defendants contend Plaintiff was released 45 minutes after arriving at the police station and was offered a ride home, but Plaintiff declined the offer. (*Id.*)

Plaintiff claims that after the incident Plaintiff was afraid of being falsely arrested, and that he moved to Michigan because of his fear of encountering Savickas. (Pl.'s 56.1(b) ¶¶ 20-21.) The parties agree that Plaintiff lived in that area until September 2009, and was arrested in that vicinity in August 2009. (Def.'s Resp. ¶ 21.)

## DISCUSSION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Lloyd v. Swifty Transp., Inc.,* 552 F.3d 594, 600 (7th Cir. 2009).

### I.    Unreasonable Seizure

Plaintiff first alleges that Savickas's seizure of him violated the Fourth Amendment's prohibition of unreasonable searches or seizures. "[P]olice may arrest an individual if they have probable cause to believe that the individual engaged in criminal conduct." *United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009). "Probable cause is a fluid concept based on common-sense interpretations of reasonable police officers as to the totality of the circumstances known at the time the event occurred." *United States v. Ellis*, 499 F.3d 686, 689 (7th Cir. 2007)

(citation and quotation omitted).  Furthermore, "[t]he officers' subjective motivations are irrelevant so long as they have probable cause to justify the search and seizure." *Burnside*, 588 F.3d at 517-18.

Based on Savickas's account of events, there is no question that probable cause to arrest existed: Savickas claims that he believed Moore dropped an illegal gun two days earlier, a criminal act.  Even if Savickas intended to pump Moore for information, his arrest would be justified if he also believed Moore guilty of the gun offense.

Moore, however, presents a completely divergent account of events.  He alleges that Savickas arrested him not because he genuinely suspected him of possessing the gun two days earlier—but because he intended to use the threat of a gun charge as leverage to get information from Moore.  Under Moore's version of the circumstances, where Savickas did not believe Moore guilty of the gun offense, no probable cause exists.  The question is whom to believe, and that is a question for the jury.  "Where the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for the factfinder." *Id.* at 770.  While a court may decide whether probable cause to arrest exists, that "determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (citation and quotation omitted).

The court notes that the record does lend support to Plaintiff's account:  Savickas's partner, Torres, could not identify Plaintiff (Savickas Deposition at 43); Savickas failed to fill out any paperwork concerning the arrest, not even a contact card (*id.* at 47); Savickas admitted to running "off-the-books" informants (*id.* at 63); Moore and Savickas knew each other from the neighborhood (*id.* at 34), and Moore claims Savickas had searched him twenty to thirty times in the past.  (Moore

Deposition at 58-61.). In addition, it is undisputed that the description of the offender Savickas provided in his initial report did not match Moore in height or age. (Pl.'s 56.1(b) ¶¶ 1, 3; Def.'s Resp. ¶¶ 1, 3.) These facts, and the agreement between Savickas's and Moore's accounts up to the point of arrival at the police station, suggest that Moore's accusations were not pulled from thin air. Regardless, when the plausibility of a Plaintiff's account depends on the credibility of the Plaintiff, "it is not our place to decide who is telling the truth." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007). Defendant's motion for summary judgment on the unreasonable seizure account is denied.

## II.      False Arrest

Plaintiff alleges false arrest on the same facts previously outlined. Defendants again argue that  this claim should be dismissed because Savickas had probable cause to arrest Plaintiff. "Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). The court's analysis of the unreasonable seizure claim concluded that there is a genuine dispute of material fact as to whether Savickas had probable cause to arrest Plaintiff. For the same reason, summary judgment on this claim is also denied.

## III.      Qualified Immunity

Defendants argue that Savickas should be shielded from liability based on qualified immunity. This argument requires only brief discussion. Qualified immunity shields a police officer from liability unless (1) the officer violated Plaintiff's constitutional rights, and (2) those rights were clearly established at the time of the time the officer acted. *Moss v. Martin*, 614 F.3d 707, 709 (7th Cir. 2010). Moore alleges that Savickas arrested him without probable cause for doing so, and then threatened him with a gun charge if he did not offer up information about drug or gun activity. While qualified immunity may attach when an officer arrests someone without probable cause, an officer is not shielded from liability for a wholly arbitrary arrest. "It is well-established that an arrest without

probable cause violates the Fourth Amendment." *Fox v. Hayes*, 600 F.3d 819, 832 (7th Cir. 2010). The question of whether qualified immunity shields Savickas from liability must go to the jury.

## IV.    Intentional Infliction of Emotional Distress

Plaintiff also alleges that his arrest caused extreme emotional distress.  To establish the intentional infliction of emotional distress under Illinois law, a Plaintiff must show that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010).  Illinois case law sets a high bar for such a claim.  Thus "[a]lthough fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term emotional distress, these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 360 N.E.2d 765, 767 (1976) (citation and quotation omitted).

Plaintiff argues that Savickas threatened to send him to prison for years based on a false gun charge.  (Response at 4-5.)  This led to lingering fear, Plaintiff contends, that Savickas would falsely arrest him.  (*Id.*)  The tangible effect of this fear was that he moved out of state (to Kalamazoo, Michigan) five months after the alleged incident.  (Moore Deposition at 29.)  No accusation has been made that Savickas threatened or engaged in physical violence, nor that he ever approached Plaintiff again after the alleged incident.  The court agrees that the arbitrary arrest of an individual may be the type of conduct that is "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community," which would satisfy the first element of an IIED claim.  *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 21, 607 N.E.2d 201, 211 (1992). In most cases where courts have sustained such a claim, however, there have been additional factors.  *See, e.g.*, *Henry v. Ramos*, No. 97 C 4025, 1997 WL 610781, at *2 (N.D. Ill. Sept. 28, 1997) (denying motion to dismiss IIED claim where plaintiff claimed police officers "used

their power to arrest and eventually convict an innocent person"); *Guerra v. Hunger*, No. 97 C 8772, 1998 WL 246399, at *4 (N.D. Ill. 1998) (denying motion to dismiss IIED claim where an individual was arrested, in front of his nine-year-old son, for complaining about a parking ticket, and suffered a fractured shoulder and severe head laceration during the course of his arrest). In short, "there must be allegations of more than a misuse of police authority to support a claim of extreme and outrageous behavior." *Carr v. Village of Richmond*, No. 96 C 50203, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996).

Furthermore, Plaintiff has not offered any evidence to support the remaining two elements of this claim. Plaintiff does not allege that Savickas brought him to the police station in order to cause emotional distress; rather, he alleges Savickas did so to pry information from him. Plaintiff himself has extensive familiarity with law enforcement, suggesting this particular incident, while traumatic, did not inflict the type of emotional distress necessary to support an IIED claim. Further, Plaintiff makes no claim as to any manifestation of his fear aside from his eventual relocation to Michigan. Plaintiff has not presented a genuine issue of material fact on this claim sufficient to survive summary judgment.

## V.   *Respondeat Superior*

Plaintiff brings a state law *respondeat superior* claim alleging that the City of Chicago is liable for the actions of its agent, Savickas. Because this court has dismissed the state law IIED claim, the only remaining claims are the § 1983 claims for false arrest and unreasonable seizure. "A municipality may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (citation and quotation omitted). The court grants Defendants' motion for summary judgment on this claim.

## VI.   Indemnification

Plaintiff contends that because Savickas's acts were willful and committed within the scope of his employment, he must be indemnified by the City of Chicago pursuant to the Illinois Tort

Immunity Act, 745 ILCS 10/9-102.  Assuming that the City deems § 1983 claims governed by this Act, the indemnification claim also survives.

## CONCLUSION

Defendants' motion for summary judgment [50] is granted as to Counts III and IV, and is otherwise denied.

ENTER:

Dated:  March 30, 2011

_____
REBECCA R. PALLMEYER
United States District Judge